E. VANESSA ASSAE-BILLE
NY Bar No. 5165501
BENJAMIN CLARK
IL Bar No. 6316861
Consumer Financial Protection Bureau
1700 G Street, NW
Washington, D.C. 20552
Phone: (202) 435-7688
Phone: (202) 435-7871
E-mail: elisabeth.assae-bille@cfpb.gov
E-mail: benjamin.clark@cfpb.gov

*Attorneys for Petitioner*

FILED
ENTERED                      SERVED
COUNSEL/PARTIES OF RECORD
JUN 1 2 2023
CLERK US DISTRICT COURT
DISTRICT OF NEVADA
BY:                          DEPUTY

UNITED STATES DISTRICT COURT
DISTRICT OF NEVADA

CONSUMER FINANCIAL PROTECTION BUREAU,

    Petitioner,

v.

CHECK CITY PARTNERSHIP, LLC,

    Respondent.

2:23-ms-00035

**PETITION TO ENFORCE CIVIL INVESTIGATIVE DEMAND AND SUPPORTING MEMORANDUM**

The Consumer Financial Protection Bureau (Bureau) petitions this Court for an order directing Check City Partnership, LLC (Check City) to show cause as to why it should not comply fully with the Bureau's civil investigative demand (CID). The Bureau is an independent federal agency charged with regulating the offering and provision of consumer financial products and services, as well as protecting consumers from unfair, deceptive, and abusive acts and practices. 12 U.S.C. §§ 5491(a), 5511. To fulfill this purpose, the Consumer Financial Protection Act of 2010 (CFPA) authorizes the Bureau to issue a CID to any entity it has reason to believe may have information relevant to a violation of federal consumer financial law. 12 U.S.C. § 5562(c)(1). A summary proceeding is necessary so the Bureau may thoroughly conduct its investigation. As set forth below, the Bureau has authority to

issue the CID to Check City, and this Court has authority to enforce it. Accordingly, the Bureau respectfully asks this Court to enter an order requiring Check City to show cause as to why it should not comply with the CID and, thereafter, enter an order requiring full compliance.

## JURISDICTION AND VENUE

The CFPA authorizes the Bureau to file a petition for an order to enforce the CID in the federal district court where the CID recipient "resides, is found, or transacts business." 12 U.S.C. § 5562(e)(1); 12 C.F.R. § 1080.10(b)(1). This Court has subject-matter jurisdiction under § 1052(h)(1) of the CFPA. 12 U.S.C. § 5562(h)(1). And venue is proper because Check City is located, resides, and does business in the District of Nevada.

## STATEMENT OF FACTS

Check City is a limited-liability company that provides short-term, small-dollar, and installment loans to consumers. On December 16, 2022, the Bureau issued to Check City a CID via e-mail, as part of an investigation into possible violations of the CFPA. Assae-Bille Decl. ¶ 6; *see* 12 U.S.C. § 5562(c)(8). The CID required Check City to respond to six interrogatories, four requests for written reports, and twenty-one requests for documents by January 26, 2023. *Id*, Ex. A.

The parties met and conferred by telephone on December 29, 2022 and again on January 6, 2023 and January 9, 2023 to discuss and attempt to resolve all issues regarding Check City's compliance with the CID. During these calls, Check City indicated an intent to comply with the CID. *Id*. ¶ 7.

On January 18, 2023, and on January 24, 2023, Check City requested in writing modifications to the CID, including an extension of the deadline to respond to the CID. *Id*. ¶ 8; *see, generally* Ex. B. On February 2, 2023, the Bureau extended the CID compliance date to May 8, 2023, with interim production dates of January 26, 2023; February 13, 2023; February 20, 2023; February 27, 2023; March 6, 2023; March 20, 2023; March 27, 2023; April 10, 2023; and May 1, 2023. *Id*. ¶ 9, Ex. C at 6-7.

As relevant to this petition, Check City's responses to Request for Documents No. 21 (seeking audio recordings) was due on February 13, 2023; its response to Request for Documents Nos. 11 and 19 (seeking internal communications) were due on March 6, 2023; and its response to Request for Documents No. 18 (seeking loan files) and Request for Documents No. 20 (seeking external communications) were due on March 27, 2023. *Id.* Check City's responses to the four Requests for Written Reports (seeking borrower-level, loan-level, payment-level, and note- or memo-level data) were due in four scheduled tranches: February 27, 2023, March 20, 2023, April 10, 2023, and May 1, 2023. *Id.* And its response to Interrogatory No. 6 (seeking information on complaints) was due on March 27, 2023; its response to Interrogatory No. 5 (seeking information about how loans were underwritten) was due on May 8, 2023, and its response to Interrogatory No. 3(i) (seeking call notes) was due in three tranches on February 27, 2023, March 20, 2023, and April 10, 2023. *Id.*

In a series of requests, Check City sought further extensions of the deadlines to respond to the CID's four Requests for Written Reports and Interrogatory No. 3(i). First, in e-mails dated February 24, 2023 and March 3, 2023, Check City asked the Bureau to (1) extend the February 27, 2023 production date for the responses to Requests for Written Reports to March 13, 2023, and (2) extend the production date for Interrogatory No. 3(i) so that tranches were due on April 10, 2023 and in May 2023. *Id.* ¶ 10, Ex. D at 4. As part of that request, Check City represented that "significant progress has been made" on perfecting the queries needed to pull the data requested by the CID and stated: "Check City will commit to producing this data sooner, if at all possible." *Id.* Then, on March 10, 2023, Check City requested a third extension of the deadline to respond to the CID. In this request, Check City represented that "the initial data pull for Check City will be complete in approximately one week," and it asked the Bureau for permission to produce responses to the requests for written reports on April 10, 2023, May 1, 2023, May 22, 2023, and June 5, 2023. *Id.* ¶ 12, Ex. F at 2. In modification letters sent on March 6, 2023 and March 15, 2023, the Bureau granted each of these requests. *Id.* ¶¶ 11, 13; Exs. E at 3-4, G at 3.

Check City made its last production in response to the CID on March 27, 2023. *Id.* ¶¶ 14, 20; Ex. H at 9-11. To date, Check City has not produced any responses to any of the Requests for Written Reports, Request for Documents Nos. 11, 18, 19, 20, and 21, and Interrogatory Nos. 3(i), 5, and 6. *Id.* ¶ 21.

On March 31, 2023, Check City counsel asked the Bureau to halt its investigation of Check City until the U.S. Supreme Court decides the Bureau's appeal in *Com. Fin. Servs. Ass'n., et. al v. CFPB*, 51 F.4th 616 (5th Cir. 2022), *cert. granted*, No. 22-448 (U.S. Feb. 27, 2023) (hereinafter, *CFSA*) (in *CFSA*, the Fifth Circuit held that the Bureau's funding mechanism violates the Appropriations Clause). *Id.* ¶ 18, Ex. J at 2-3. This marked the first time that Check City raised *CFSA* or the specific issue at the center of the *CFSA* appeal—*i.e.*, the Bureau's funding. *Id.* ¶ 19.

On April 3, 2023, the Bureau informed Check City counsel that it did not agree to halt its investigation of Check City, and asked Check City to confirm its intent to comply with the CID under the modified schedule. *Id.* ¶ 18, Ex. J at 1-2. On April 3, 2023, Check City counsel confirmed that Check City would no longer comply with the modified CID. *Id.* ¶ 18, Ex. J at 1. On May 12, 2023, Check City reiterated that it would not provide responses pending the resolution of *CFSA*. Ex. I at 2.

Check City has not produced responses to the CID since March 27, 2023. *Id.* ¶ 20. This refusal to comply with the CID burdens, delays, and impedes the Bureau's investigation of Check City's conduct in connection with the provision of short-term, small-dollar, or installment loans to consumers.

## ARGUMENT

The law is well-settled that administrative agencies are to be given wide latitude in exercising their power to investigate by subpoena, including investigating by CID. *EEOC v. Fed. Express Corp.*, 558 F.3d 842, 851 n.3 (9th Cir. 2009); *see also, e.g., EEOC v. Karuk Tribe Hous. Auth.*, 260 F.3d 1071, 1076 (9th Cir. 2001) ("courts must enforce administrative subpoenas unless the evidence sought by the subpoena is plainly incompetent or irrelevant to any lawful purpose of the agency") (quotation marks and citations omitted); *FTC v. Ken*

4

*Roberts Co.*, 276 F.3d 583, 586 (D.C. Cir. 2001); *United States v. Constr. Prods. Research, Inc.*, 73 F.3d 464, 470 (2d Cir. 1996); *Morgan Drexen, Inc. v. CFPB*, 979 F. Supp. 2d. 104, 107 (D.D.C. 2013) (noting that CIDs are a form of administrative subpoena); *FTC v. Mfrs. Hanover Consumer Servs., Inc.*, 543 F. Supp. 1071, 1073 (E.D. Pa. 1982) ("A CID is analogous to an investigative subpoena.").

Judicial enforcement of a CID is appropriate when (1) Congress has granted the authority to investigate, (2) procedural requirements have been followed, and (3) the evidence sought is relevant and material to the investigation. *See EEOC v. Fisher Sand & Gravel, Co.*, No. 2:12-CV-00649-JCM, 2012 WL 3996138, at *1 (D. Nev. Sept. 11, 2012) (citing *Fed. Express Corp.*, 558 F.3d at 848 and *EEOC v. Children's Hosp. Med. Ctr. of N. Cal.*, 719 F.2d 1426, 1428 (9th Cir. 1983) (en banc)); *see also United States v. Morton Salt Co.*, 338 U.S. 632, 652 (1950) (finding agency investigation to be "sufficient if the inquiry is within the authority of the agency, the demand is not too indefinite and the information sought is reasonably relevant."). If these three requirements are met, the CID must be enforced unless the respondent can show that the CID is overbroad or unduly burdensome. *See FHFA v. SFR Invs. Pool 1, LLC*, No. 2:17-CV-00914-GMN-PAL, 2018 WL 1524440, at *5 (D. Nev. Mar. 27, 2018) (citation omitted); *see also EEOC v. McLane Co.*, 804 F.3d 1051, 1056 (9th Cir. 2015), *vacated on other grounds*, 581 U.S. 72 (2017) ("If [the three initial requirements] are met, the court must enforce the subpoena unless the objecting party shows that the subpoena is overbroad or that compliance would be unduly burdensome").

As shown below, the Bureau has met all three requirements, and Check City cannot show, and has not argued, that the CIDs are overbroad or unduly burdensome.

**A. The Bureau has investigative authority.**

Congress clearly granted the Bureau the authority to investigate in this instance. *See Fed. Express Corp.*, 558 F.3d at 848 (this criterion is met "unless jurisdiction is plainly lacking") (quotation marks and citation omitted); 851 n.3 (collecting cases). The CFPA empowers the Bureau to issue a CID whenever it has reason to believe that "any person . . . may have any information[] relevant to a violation" of "Federal consumer financial law." 12

U.S.C. § 5562(c)(1). A Bureau CID may, among other things, require the recipient to respond to interrogatories, provide written reports, produce documents, and submit tangible things. *Id.* Case law also recognizes that "agencies should remain free to determine, in the first instance, the scope of their own jurisdiction when issuing investigative subpoenas." *Ken Roberts Co.*, 276 F.3d at 586.

The violations potentially at issue here are plainly within the scope of the Bureau's authority. As required by the CFPA, 12 U.S.C. § 1052(c)(2), the CID contained a Notification of Purpose informing Check City that the CID was issued as part of an ongoing investigation to determine whether:

> short-term or small-dollar lenders or associated persons, in connection with providing short-term, small-dollar, or installment loans, have: (1) improperly induced borrowers to take out, renew, or refinance loan products that harmed them; (2) misrepresented the full, long-term costs of serially rolling over, renewing or refinancing their loan products; or (3) misrepresented that their loans are short-term obligations despite being structured and serviced in a manner that renders them longer-term obligations for many borrowers, all in a manner that is unfair, deceptive, or abusive in violation of §§ 1031 and 1036 of the Consumer Financial Protection Act of 2010, 12 U.S.C. §§ 5531, 5536.

Assae-Bille Decl. ¶ 6, Ex. A at 3 (CID Notification of Purpose). Short-term, small-dollar, and installment loans offered and provided by Check City, and the subsequent collection of them, are "consumer financial product[s] or service[s]" under the CFPA. 12 U.S.C. § 5481(5), (15)(A)(i), (15)(A)(x). Check City is a "covered person" under the CFPA because it has engaged in offering and providing consumer financial products or services. 12 U.S.C. § 5481(6). As a result, if Check City has improperly induced consumers to borrow these loan products, misrepresented their costs, or mischaracterized them as short-term obligations, then the Bureau could find that Check City engaged in unfair, deceptive, or abusive acts or practices under the CFPA. 12 U.S.C. §§ 5531(a), 5536(a)(1)(B). The Bureau's investigation thus falls squarely within its authority to investigate violations of federal consumer financial law. 12 U.S.C. §§ 5531(a), 5562(c).

### B. All administrative prerequisites are met.

The Bureau also followed all the required administrative steps to issue a civil investigative demand. 12 U.S.C. § 5562(c); 12 C.F.R. pt. 1080. On December 16, 2022, a Deputy Assistant Director of the Office of Enforcement issued the CID. The CID was served on Check City counsel via e-mail, with consent from Check City. Assae-Bille Decl. ¶ 6; Ex. A at 3, 49. As noted above, and pursuant to the CFPA, 12 U.S.C. § 5562(c)(2), the CID contained a Notification of Purpose apprising Check City of the nature of the conduct under investigation and applicable provisions of law. Assae-Bille Decl. ¶ 6, Ex. A at 3.

### C. The CID seeks information relevant to the Bureau's investigation.

Courts traditionally defer to the investigating agency to determine relevance in the context of an administrative subpoena, which must be enforced if the information sought could be pertinent to a legitimate agency inquiry. *Endicott Johnson Corp. v. Perkins*, 317 U.S. 501, 507-09 (1943); *see also, e.g., Morton Salt Co.*, 338 U.S. at 652. "The Supreme Court has held that the relevance requirement is 'not especially constraining.'" *SFR Invs. Pool 1, LLC*, 2018 WL 1524440, at *7 (citing *EEOC v. Shell Oil Co.*, 466 U.S. 54, 68 (1984)); *see also McLane Co. v. EEOC*, 581 U.S. 72, 76-77 (2017), *as revised* (Apr. 3, 2017). An agency request is relevant as long as it is not "plainly incompetent or irrelevant to any lawful purpose of the agency." *Karuk Tribe Hous. Auth.*, 260 F.3d at 1076 (internal quotations and citations omitted); *see also United States v. Exxon Mobil Corp.*, 943 F.3d 1283, 1287 (9th Cir. 2019) ("The relevance requirement is not especially constraining, but is instead generously construed to afford the agency access to virtually any material that might cast light on the matter under investigation.") (citations and quotations omitted). In addition, an agency like the Bureau "has a power of inquisition . . . [and] can investigate merely on suspicion that the law is being violated, or even just because it wants assurance that it is not." *Morton Salt Co.*, 338 U.S. at 642-43.

Here, the Bureau's CID seeks information relating to Check City's business practices with respect to its provision of and collection on short-term, small-dollar, and installment loans, a consumer financial product or service. Assae-Bille Decl. ¶¶ 4, 6; *see, generally* Ex.

A. at 4-12. The information sought in the CID is plainly relevant to a legitimate Bureau inquiry.

### D. The CID requests at issue are not overbroad or unduly burdensome.

Finally, the CID requests that Check City has refused to respond to are not overbroad or unduly burdensome. "A demand is not too indefinite when all of the categories of information are sufficiently specific to enable the respondent to understand what information the agency seeks," and the CID "clearly identifies the information and documents sought." *CFPB v. Ctr. for Excellence in Higher Educ.*, No. 2:19-CV-00877-RJS-CMR, 2022 WL 2718245, at *4 (D. Utah Apr. 20, 2022), *report and recommendation adopted*, No. 2:19-CV-00877-RJS-CMR, 2022 WL 4182301 (D. Utah Sept. 13, 2022) (internal punctuation marks and citations omitted). However, "the subpoena must not be so broad that compliance with its terms is unduly burdensome." *Id.* As one court in this district has previously explained, "[t]o demonstrate that an administrative subpoena imposes an undue burden, a subpoenaed party must provide specific evidence showing that compliance 'threatens to unduly disrupt or seriously hinder normal operations of a business.'" *SFR Invs. Pool 1, LLC*, 2018 WL 1524440, at *7 (citing *CFPB v. Future Income Payments, LLC*, 252 F. Supp. 3d 961, 970 (C.D. Cal. 2017), and *FTC v. Texaco, Inc.*, 555 F.2d 862, 871-72 (D.C. Cir. 1977) (en banc)). This standard "is not easy to meet," *SFR Invs. Pool 1, LLC*, 2018 WL 1524440, at *7, and "[s]ome burden on subpoenaed parties is to be expected and is necessary in furtherance of the agency's legitimate inquiry and the public interest." *Texaco*, 555 F.2d at 882.

Here, Check City has refused to respond to three interrogatories, four requests for written reports, and five document requests. These interrogatories seek notes related to consumer calls and information about complaints and how loans are underwritten. The four requests for written reports seek borrower-level, loan-level, payment-level, and note-level data. And the document requests seek communications, loan files, and call recordings. *Id.* ¶ 6, Ex. A at 4-12. This is specific enough for Check City to understand the information the Bureau seeks. Indeed, since the Bureau issued the CID in December 2022, Check City has provided the Bureau multiple updates on its progress with respect to these requests,

indicating that Check City understands what information the CID seeks and is able to respond. *E.g.*, Assae-Bille Decl. ¶¶ 10, 12; Exs. D at 4, F at 2.

The Bureau has made reasonable efforts to limit Check City's compliance burden, consistent with the needs of the investigation. For example, in its January 18, 2023 letter, Check City represented that responding to Request for Documents No. 18 (seeking complete loan files) would be burdensome because it required manually collecting hardcopy documents. *Id.* ¶ 8, Ex. B at 10. On February 2, 2023, the Bureau narrowed the request to exclude hardcopy documents and any title loans, with the understanding that Check City thus would be producing digital loan-level information that it was "already working to collect and produce . . . in connection with responding [to] the Bureau's Requests for Written Reports." *Id.* ¶¶ 8, 9; Ex. B at 10, Ex. C at 3. And, when Check City wrote to the Bureau on February 24, 2023, March 3, 2023, and again on March 10, 2023, to seek a second and third CID modification, the Bureau promptly granted Check City's precise requests. *Id.* ¶¶ 10-13; Exs. D at 1, 4, E at 2-4, F at 2, G at 3.

Check City has confirmed its ability to respond to all but one of the outstanding requests. For example, in its most recent request for an extension of the modified CID's deadlines, Check City represented significant progress had been made in gathering information responsive to the requests for written reports (*i.e.*, noting on March 10, 2023, that "the initial data pull for Check City will be complete in approximately one week"). *Id.* ¶ 12, Ex. F at 2. And by e-mail on May 12, 2023, Check City represented that it intended to comply with the requests for internal communications pending the resolution of *CFSA*. *Id.* ¶ 16, Ex. I at 1-2.

The only request with which Check City has represented it cannot comply is Request for Documents No. 18. Check City informed the Bureau on March 27, 2023 that producing the responsive loan files was too burdensome, and sought a modification that would allow for a response based on sampling. *Id.* ¶ 14, Ex. H at 9-10. But the Bureau has already taken steps to completely address the burdens raised by Check City (*e.g.*, by excluding title loans and hardcopy documents from the scope of the request), the effects of which Check City's

modification request failed to acknowledge. *Id.* ¶ 9, Ex. C at 3. In any event, Check City indicated its intent to stop complying with the CID before the Bureau could address this modification request. *Id.* ¶ 18, Ex. J at 2-3.

Given the limited scope of these CID requests, the significant progress that Check City previously represented having made on responding to these requests, and the fact that the Bureau has made every reasonable effort to ease Check City's compliance burden, the CID is not unduly burdensome.

### E. Summary enforcement is proper.

"Questions concerning agency subpoenas should be promptly determined so that the subpoenas, if valid, may be speedily enforced." *SEC v. First Sec. Bank of Utah, N.A.*, 447 F.2d 166, 168 (10th Cir. 1971); *see also Fed. Mar. Comm'n v. Port of Seattle*, 521 F.2d 431, 433 (9th Cir. 1975) (noting "that the very backbone of an administrative agency's effectiveness in carrying out the congressionally mandated duties of industry regulation is the rapid exercise of the power to investigate the activities of the entities over which it has jurisdiction and the right under the appropriate conditions to have district courts enforce its subpoenas."); *SEC v. Lavin*, 111 F.3d 921, 926 (D.C. Cir. 1997) (noting that subpoena enforcement actions "are generally summary in nature and must be expedited"). Thus, "while the court's function is 'neither minor nor ministerial,' the scope of issues which may be litigated in an enforcement proceeding must be narrow, because of the important governmental interest in the expeditious investigation of possible unlawful activity." *Texaco*, 555 F.2d at 872 (internal quotations omitted); *see, e.g., SFR Invs. Pool 1, LLC*, 2018 WL 1524440, at *5 ("The scope of the court's inquiry is 'quite narrow' in a proceeding to enforce an administrative subpoena.") (quoting *United States v. Golden Valley Elec. Ass'n*, 689 F.3d 1108, 1113 (9th Cir. 2012)). This Court thus has authority to resolve this proceeding summarily.

### CONCLUSION

Because the Bureau has shown that it has authority to investigate, that the procedural requirements have been followed, that the evidence it seeks sought is relevant and material to

the investigation, and that the CID is not overbroad or unduly burdensome, the Bureau has demonstrated that enforcement of the CID is appropriate.

Therefore, the Bureau respectfully ask that this Court:

1. order Check City to show cause, in writing, why it should not comply with the Bureau CID issued on December 16, 2022, as modified on February 2, 2023, March 6, 2023, and March 15, 2023;

2. order Check City to comply fully with the CID within 14 days;

3. award the Bureau the costs it incurred in maintaining this action; and

4. grant such other relief as this Court deems just and proper.

Dated: June 12, 2023

Respectfully submitted,

ERIC HALPERIN
Enforcement Director

DEBORAH MORRIS
Deputy Enforcement Director

EMILY SACHS
Assistant Litigation Deputy

/s/ E. Vanessa Assae-Bille
E. VANESSA ASSAE-BILLE
NY Bar No. 5165501
E-mail: elisabeth.assae-bille@cfpb.gov
Telephone: 202-435-7688

BENJAMIN CLARK
IL Bar No. 6316861
E-mail: benjamin.clark@cfpb.gov
Telephone: 202-435-7871

Consumer Financial Protection Bureau
1700 G Street, NW
Washington, DC 20552

*Attorneys for Petitioner*
*Consumer Financial Protection Bureau*